UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


KENNETH ANTHONY IDEL                       CIVIL ACTION NO. 13-cv-1262
a/k/a Kenneth Anthony Idel Culbreth

VERSUS                                     JUDGE FOOTE

LOUIS EDWARDS, ET AL                       MAGISTRATE JUDGE HORNSBY


## REPORT AND RECOMMENDATION

**Introduction**

Kenneth Anthony Idel Culbreth ("Plaintiff") is a self-represented inmate who was formerly housed at the David Wade Correctional Center. Fellow inmate Charles Cody became angry with Plaintiff, destroyed some of Plaintiff's property, and struck Plaintiff with a mop wringer. Plaintiff filed this civil action against the prison officials he alleges failed to protect him from that attack, as well as almost every other prison official who had any connection to the events whatsoever. He also asserts claims for loss of property, due process denial, and the like.

What should have been a fairly straightforward failure-to-protect suit began with a 35-page complaint accompanied by 55 pages of exhibits. Plaintiff also filed an amended complaint and a number of related exhibits. He then began regularly filing lengthy submissions that totaled hundreds of pages, which eventually resulted in the court issuing an order (Doc. 125) that found Plaintiff had grossly abused the litigation process through the filing of multiple, voluminous, repetitive submissions. Several of Plaintiff's prior filings

were denied or stricken, and he was allowed additional time to file a reasonable motion for summary judgment with a memorandum that did not exceed 30 pages and supporting exhibits that did not exceed 75 pages.  Plaintiff nonetheless exceeded the page limit for exhibits, and he followed up even more exhibits.  Despite Plaintiff's disregard of the court's order, the court will not strike his filings on this occasion.

Currently before the court are the Motion for Summary Judgment (Doc. 110) filed by the several defendants and Plaintiff's Motion for Summary Judgment (Doc. 132).  There were a number of earlier filings related to motion practice, but the court made clear in its order (Doc. 125) that only those filings allowed by that order would be considered in the assessment of these motions.

Plaintiff seek summary judgment on all his claims.  Defendants raise defenses including qualified immunity, Eleventh Amendment immunity, failure to state an actionable claim, and lack of personal involvement.  Plaintiff is proceeding as a pauper, so the court is also authorized to dismiss any claim it finds to be frivolous or malicious, or that fails to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2)(B).  For the reasons that follow, it is recommended that Plaintiff's motion be denied and that Defendants' motion be granted in part and denied in part.

**Criminal Charges Against Cody**

Plaintiff complains that prison officials did not assist him in having his attacker, inmate Charles Cody, criminally charged and prosecuted for aggravated battery in a state court.  It is the district attorney, not prison officials, who decides whether a person is or is

not prosecuted for state law criminal offenses.  The Supreme Court has recognized that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 93 S.Ct. 1146, 1149 (1973).  Accordingly, a prisoner who complained that a sheriff did not file criminal charges against guards who beat him failed to state an actionable claim.  Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990). See also Lewis v. Jindal, 368 Fed. Appx. 613, 614 (5th Cir. 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution.").  Plaintiff has not stated a claim against any defendant for not assisting him in having Cody charged with a crime.

**Disciplinary Sanctions**

Officers who witnessed the altercation reported that inmate Cody was destroying Plaintiff's property and, when confronted by Plaintiff, hit Plaintiff in the chest with a mop wringer.  Plaintiff fought back, and officers had to physically separate the two inmates. Plaintiff was handcuffed, taken for examination by medical staff, and placed in administrative segregation.  Cody was also removed from the scene.

Both inmates were charged with disciplinary offenses.  Plaintiff pleaded guilty to violating Rule #10 (fighting) after he read the rule violation report, and with the assistance of inmate counsel.  A disciplinary board comprised of Asst. Warden James Arnold and Nikki McCoy sentenced Plaintiff to a transfer to the extended lockdown unit and 12 weeks of loss of yard and recreation privileges.  Plaintiff was also ordered to pay $8.00 in restitution for

fighting.  Plaintiff appealed to Deputy Warden Angie Huff, who denied the appeal.  She noted that Plaintiff fought back after being hit, and his actions exceeded those necessary to protect himself.  They also gave rise to the risk of injury to the officers who had to intervene.  Plaintiff disputed those facts and Huff's rationale, and he appealed to the secretary of the department, who upheld the sanction.

Plaintiff complains that he was denied due process because the decisionmakers on the disciplinary board were biased and officials falsified statements that were used in the proceedings.  Prisoners have certain procedural due process rights, but they are not applicable unless a constitutionally protected liberty interest is at stake.  Such a liberty interest is generally not at issue unless the prisoner faces restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 115 S.Ct. 2293 (1995).

Prisoner Sandin was found guilty of misconduct after yelling at an officer, and he was sentenced to 30 days disciplinary segregation in a special holding unit.  The Court found no liberty interest at issue because discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of a sentence imposed by a court. The solitary confinement and segregation did not present a dramatic departure from the basic conditions of the prisoner's sentence.  The Fifth Circuit, after Sandin, has found that "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest."  Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996).  Absent extraordinary circumstances, segregation, being an incident to the ordinary

life of a prisoner, will never be a ground for a procedural due process claim.  Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998).

The prisoner in Hernandez v. Velasquez, 522 F.3d 556 (5th Cir. 2008) alleged confinement to a shared cell for 12 months with permission to leave only for showers, medical appointments, and family visits.  The Fifth Circuit found the assignment well within the range of confinement to be normally expected for a prisoner serving a life sentence. Similar claims due process were denied in  Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000) (30–day commissary and cell restrictions did not implicate a liberty interest), Watkins v. Lnu, 2013 WL 5977683 (5th Cir. 2013)(14 days of disciplinary segregation and three-month loss of commissary, visitation, and telephone privileges did not implicate a liberty interest) and Dehghani v. Vogelgesang, 229 Fed. Appx. 282, 284 (5th Cir. 2007) (eight days in solitary confinement did not give rise to claim because "it is settled law that disciplinary segregation does not present" an atypical deprivation under Sandin), and Scott v. Nail, 589 Fed. Appx. 297 (5th Cir. 2015) (Sandin defeated due process claim of inability to call witnesses at disciplinary hearing that resulted in ten days of disciplinary segregation).

Plaintiff was transferred from a dorm housing unit to extended lockdown, and he was deprived of yard and recreation privileges for 12 weeks.  Prisoners are often housed in such conditions for many months at a time, so Plaintiff's conditions were not that unusual. Plaintiff's housing arrangement after the imposition of discipline, under the Sandin standards, was not an atypical and significant hardship in relation to the ordinary incidents of prison life, so procedural due process claims may not be based on the disciplinary charge or how

the hearing was conducted.  All procedural due process claims based on the disciplinary proceedings and related punishment should be dismissed.

**Nail and Hunter**

Plaintiff also complains that Lonnie Nail and Mark Hunter served on the Classification Review Board and "falsified documents" to deny his release from extended lockdown.  Plaintiff bases this assertion on the board allegedly noting as a reason for continued lockdown the "serious nature of past offenses."  Plaintiff asserts that this is wrong because he did not receive any rule violation reports or sanctions while he was housed on extended lockdown.  Plaintiff's dissatisfaction with the fairness of the decision he received from the board is, like the claims above, barred by <u>Sandin</u>.  All related claims against Nail and Hunter should be dismissed. Hunter is not otherwise targeted by a claim, so he should be dismissed from the case.

**Conditions of Confinement**

Plaintiff asserts in his motion that he was subjected to cruel and unusual conditions while housed on extended lockdown in N-4C "by orders of Lonnie Nail" after he wrote the warden and secretary for help, and his family members faxed and phoned on his behalf. Plaintiff alleges in his motion that he was placed in a strip cell in December 2012, and officials were authorized by Nail to cut off the heat, turn on blowers, and open all windows to punish Plaintiff and fellow prisoners.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  It "does not mandate comfortable prisons," <u>Rhodes v. Chapman</u>, 101 S.Ct. 2392 (1981), but

prison officials "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 114 S.Ct. 1970 (1994).  Only those deprivations that deny "the minimal civilized measure of life's necessities" are sufficiently grave to form an Eighth Amendment violation.  Rhodes, 101 S.Ct. at 2399.

If a prisoner satisfies this objective component of an Eighth Amendment claim, he must also show that a prison official acted with a sufficiently culpable state of mind.  In prison condition of confinement cases, that state of mind is the "deliberate indifference" standard that is often applied in medical care claims.  Wilson v. Seiter, 111 S.Ct. 2321, 2326-27 (1991).  A prison official does not run afoul of that standard "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 114 S.Ct. at 1979.

Plaintiff does not back his assertions with evidence, but Defendants have not squarely challenged or addressed this claim in their submissions. No party is entitled to summary judgment on this claim, but Nail is the only defendant who is targeted by it.  This claim will have to be resolved by other means. The court has not attempted to determine whether Plaintiff properly exhausted his administrative remedies with respect to this claim, as that is

an affirmative defense that Nail must raise if it is applicable.[1]

**Loss of Property**

Reports from the incident state that inmate Cody was seen taking materials out of Plaintiff's locker box.  Cody threw paperwork on the floor and in a commode in the restroom.  Sgt. Louis Edwards wrote that he gave Cody several direct orders to stop, but Cody ignored him and picked up a water jug and dumped it on Plaintiff's foot locker.  The physical altercation happened soon after.  Edwards wrote that, after the situation was under control, some of Plaintiff's property was taken to the laundry and washed, the area around his bed and locker boxes were cleaned and sanitized, and his papers were set out to dry. Plaintiff complains that he has not been adequately compensated for commissary food items that were stolen, broken or stolen compact discs, and damage to books, legal documents, postage stamps, and clothing.

The Constitution does not provide that prison officials ensure the property of an inmate against destruction or theft by a fellow inmate.  Even if prison officials themselves destroy or take property from a prisoner, the Parratt/Hudson doctrine provides that "a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim,

---

[1] Exhaustion is an affirmative defense, so the burden is on a defendant to demonstrate that the prisoner failed to exhaust available administrative remedies.  Jones v. Bock, 127 S.Ct. 910 (2007). Judges may resolve factual disputes concerning exhaustion without the participation of a jury.  Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010).

unless the State fails to provide an adequate postdeprivation remedy." <u>Zinermon v. Burch</u>, 110 S.Ct. 975 (1990).  Plaintiff alleges that prison officials allowed the destruction or loss of property through negligence or other oversight.  He does not contend that the property was taken as the result of some established state procedure that would fall outside the scope of the doctrine.  And the Fifth Circuit has recognized that Louisiana provides an adequate tort post-deprivation remedy for procedural due process claims relating to negligent or intentional property loss claims by inmates.  <u>Marshall v. Norwood</u>, 741 F.2d 761, 763-64 (5th Cir. 1984); <u>Gross v. Normand</u>, 576 Fed. Appx. 318, 320 (5th Cir. 2014).  Accordingly, all of Plaintiff's claims against prison officials related to loss of or damage to his property should be dismissed.

**Access to Courts**

Plaintiff alleges that Classification Director Jamie Fussell denied him access to the courts because she refused to make copies of his grievances and related documents that he wished to file with the state court and the state district attorney's office.  Plaintiff supports this claim with a copy of a memo from Fussell in which she stated that she could approve copies only if they pertained to his criminal legal case and would be mailed to the courts or his attorney.  She directed Plaintiff to refer to a particular case or writ if he intended to use the papers for such a matter.  Accordingly, copies were "denied at this time."  She added that Plaintiff could "certainly write to whomever you wish," but she would not approve copies without establishment that the items were legal mail.

An inmate alleging the denial of his right of access to the courts must demonstrate a relevant, actual injury stemming from the prison official's unconstitutional conduct. Lewis v. Casey, 116 S.Ct. 2174 (1996). The right of access only encompasses a reasonably adequate opportunity to file non-frivolous legal claims challenging convictions or conditions of confinement. Johnson v. Rodriguez, 110 F.3d 299, 310-11 (5th Cir. 1999). The impairment of any other litigating capacity is simply one of the incidental and constitutional consequences of conviction and incarceration. Lewis, 116 S.Ct. at 2182.

Plaintiff did not have a constitutional right to insist that Fussell make copies of his grievances so that he could forward them to the local prosecutor in an effort to persuade him to institute criminal charges against inmate Cody. Plaintiff's constitutionally protected right of access to the court did not extend to such matters. Furthermore, Plaintiff could have easily conveyed to the district attorney all relevant facts without the necessity of flooding him with the same pile of grievances and papers that he has, despite one small setback in obtaining copies, somehow managed to submit to this court over and over again. Plaintiff has not made out an actionable claim for denial of access to the courts, so his access to the courts claim should be dismissed.

**Equal Protection**

Plaintiff makes an assertion in his motion that Deputy Warden Huff learned of the many alleged violations of Plaintiff's rights by Cody and prison employees but took no corrective action. He then asserts that a state violates the Equal Protection Clause if it disadvantages homosexuals for reasons lacking a ration relationship to legitimate

governmental aims. It is not clear that Plaintiff alleged an Equal Protection claim in his complaint or administratively exhausted such a claim, but Defendants have not squarely asserted an exhaustion defense, and the court may not raise the defense sua sponte. Defendants have generally challenged the merits of Plaintiff's claims and asserted a qualified immunity defense.

To state an equal-protection claim, a Section 1983 plaintiff must allege a state actor intentionally discriminated against him because he was a member of a protected class. Williams v. Bramer, 180 F.3d 699, 705 (5th Cir. 1999); James v Hertzog, 415 Fed. Appx. 530, 532 (5th Cir. 2011). Defendants assert qualified immunity as a defense, and "[w]hen a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002)(en banc).

Plaintiff has offered nothing but a conclusory assertion that Huff or any other official acted or did not act based on Plaintiff being homosexual. He has not pointed to clearly alleged facts in his complaint that would state such a claim under the demanding Twombly/Iqbal standard,[2] and he certainly has not presented competent evidence that would

_____

[2] A complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). "A pleading that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do." Williams–Boldware v. Denton Cnty., Tex., 741 F.3d 635, 643 (5th Cir.2014) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)) (internal quotation marks omitted).

support such a claim.  A mere conclusory assertion that an action was taken based on membership in a suspect class is insufficient to make out an equal protection claim.  Gregory v. McKennon, 430 Fed. Appx. 306, 311 (5th Cir. 2011) (prisoner's "vague and conclusory allegations that his equal protection rights have been violated are insufficient to raise an equal protection claim") and  Pedraza v. Meyer, 919 F.2d 317, 318 n. 1 (5th Cir.1990) (district court correctly dismissed as frivolous general claim that other inmates received better medical treatment).  Plaintiff's claim that he was mistreated based on his sexual orientation should be dismissed.

**Failure to Protect**

### A. Introduction; Eighth Amendment

Plaintiff's principal claim is that prison officials failed to protect him from the physical attack by inmate Cody.  Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners.  Farmer  v. Brennan, 114 S.Ct. 1970 (1994); Horton v. Cockrell, 70 F.3d 397, 400-01 (5th Cir.1995).  However, not every injury "by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety."  Farmer, 114 S.Ct. at 1977.  To establish a failure-to-protect claim, the plaintiff must show that he was detained "under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." Neals v. Norwood, 59 F.3d 530, 533 (5th Cir.1995).  "In order to act with deliberate indifference, the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and they

must also draw the inference.  Id., citing Farmer.  See also Williams v. Hampton, __ F.3rd __,

2015 WL 4546858 (5th Cir. 2015) (en banc).

### B. Summary Judgment Burdens

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. Pro. 56(a).  A fact is "material" if it might affect the outcome of the suit under

governing law.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  A dispute

is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for

either party.  Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir.

2000).

The party seeking summary judgment has the initial responsibility of informing the

court of the basis for its motion, and identifying those parts of the record that it believes

demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 106

S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon

the nonmoving party to demonstrate the existence of a genuine dispute of a material fact.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

### C. Relevant Facts

Defendants move for summary judgment but have submitted only copies of the

disciplinary and grievance records. Those records include unsworn reports from prison

officials regarding their view of the relevant facts, but none of those reports are in the form

of an affidavit or other competent summary judgment evidence.[3]  The defense motion also does not squarely contest the basic facts asserted by Plaintiff, so Defendants have not met their initial summary judgment burden.

Plaintiff, who also moves for summary judgment, alleges that he personally delivered letters to defendants Earl Benson[4] and Antonio Turner and requested their assistance.  He asserts that he sent Asst. Warden James Arnold a letter through the prison's mail system.  He attaches a copy of a letter to Turner dated August 15, 2012, three days before the attack, in which Plaintiff states that he had spoken to Turner twice already about his concerns, but he was still having problems with inmate Cody and some others "following me to the bathroom area, some or (sic) getting mad because I will not sex them and I'm trying to avoid problems."  Plaintiff stated: "I feel something bad is gonna happen so please assist me or get with Colonel Benson before I get stuck out."  Plaintiff concluded by asking Turner to "please assist me ASAP."  He attaches a letter to Col. Benson dated August 16, 2012 that also alleges Plaintiff had spoken with Benson twice already but was still "being stalked and followed

_____

[3] Federal Rule of Civil Procedure 56 allows a party to base its summary judgment position on depositions, affidavits, declarations, interrogatory answers, and similar documents.  Mere unsworn written statements do not comply with the requirements of the rule.  Okoye v. Univ. of Tex. Houston Health Science Ctr., 245 F.3d 507, 515 (5th Cir. 2001) (employee's unsworn statement "is not competent summary judgment evidence"); Moore v. True Temper Sports, Inc., 523 Fed. Appx. 280 (5th Cir. 2013) (declining to consider unsworn statements in a summary judgment contest).

[4] All claims against Benson were dismissed due to inability of Plaintiff to provide accurate service information. Doc. 70.

with sexual harassment in this dorm" by Cody and others who Plaintiff named.  Plaintiff said he did not feel secure and did not want to get hurt or hurt anyone.  Plaintiff submits a similar letter addressed to Warden Arnold dated August 16, 2012 in which he states that he had already spoken to Benson, Turner, and Major Malcolm because "some people in here or (sic) giving me problems and following me around" and "I don't feel safe."  Plaintiff said the other officers said they would help, but no one had.

Sgt. Louis Edwards wrote in his report that Plaintiff entered the area where inmate Cody was destroying Plaintiff's property, and that was when Cody hit Plaintiff in the chest with the mop wringer.  Sgt. Edwards entered the area to pull Plaintiff from the fight while Sgt. Glen Goodwin grabbed Cody.  Edwards said that he hit his beeper, but it did not go off.  He then had to remove the beeper from his holder and push the button while trying to separate the inmates.  Sgt. Bridges, Lt. Kennedy, and Maj. Malcolm arrived to assist after the inmates were separated.  As noted above, this report and the other reports from the officers are not sworn to or repeated in affidavit form, so these assertions of the facts are not presented in competent summary judgment form.

Maj. Roderick Malcolm recorded in a report that he questioned Plaintiff about the fight, and Plaintiff said that Cody was mad because Plaintiff "don't want to fool with him" and because another inmate had spread a false story that Plaintiff and another inmate were having sex in the bathroom that morning.  This resulted in Plaintiff and Cody having words on the yard, and Plaintiff "checked him in front of his boys."  Cody's side of the story was, "That boy had sex with Rickey in the bathroom, that's where the problem is.  That bitch

(Plaintiff) talked shit out on the yard and I just flashed out."  A nurse found that Plaintiff had an abrasion on the left side of his cheek and redness under his left eye.  There is no evidence of any other injuries.

### D. Edwards, Goodwin, Turner, Arnold and Malcolm

Plaintiff alleges that, despite the claims of Edwards and Goodwin that they quickly intervened, the officers could and should have hit their beepers sooner or otherwise acted more quickly to stop the attack.  He contends that the officers saw the attack brewing soon enough that they should have intervened and stopped it before it started.  If the facts at trial are shown to be as described by Edwards and Goodwin, it is very unlikely that Plaintiff will prevail against them under the demanding Farmer v. Brennan standard.  However, Defendants have not submitted any competent summary judgment evidence to back their version of the facts, and Plaintiff's unchallenged assertions must be accepted for purposes of these motions.  Under these circumstances, Goodwin and Edwards are not entitled to summary judgment on the failure to protect claim.  But at the same time, Plaintiff is also not entitled to summary judgment in his favor.[5]  The factual allegations he presents state a claim that survives pleadings review, but he has not marshaled specific factual evidence that would entitle him to judgment if it went uncontested at trial.  The failure-to-protect claims against these defendants will have to be resolved through trial or other means.

---

[5] The party who bears the burden on a claim, to prevail on a motion for summary judgment, must establish evidence that would entitle him to judgment as a matter of law if it went uncontroverted at trial.  International Shortstop, Inc. v. Rally's, Inc., 939 F.2d. 1257, 1264 (5th Cir. 1991)

The same is true of the claims against Antonio Turner, James Arnold, and Roderick Malcolm.  There are allegations and evidence in the form of letters that each was informed by Plaintiff orally or in writing that he was in danger from inmate Cody and requested reassignment.  Whether the defendants actually received those letters is not established.  No party is entitled to summary judgment on those claims.

### E. Fussell; Kennedy

Plaintiff's strongest allegation against Jamie Fussell is that Fussell told Plaintiff that Fussell would move him if Col. Benson approved it.  That simple allegations is not enough to survive even Fussell's limited attack on the failure-to-protect claim.  Plaintiff has not submitted sufficient facts with respect to Fussell that could possibly support a claim that Fussell was both aware of facts from which an inference could be drawn that there was a substantial risk of serious harm and actually drew that inference.

The claims against Patrice Kennedy should also be dismissed.  Plaintiff complains that Kennedy did not follow prison rules because she did not charge Cody with theft, damage to property, possessing contraband, and other rule violations that Plaintiff perceives were committed.  Plaintiff's only other mention of Kennedy is his assertion that she "was active in the events following her response to the emergency beeper alert."  That included speaking to Plaintiff about the incident as a nurse treated Plaintiff for his injuries.

It does not violate Plaintiff's constitutional rights if a prison official does not seek the full extent of disciplinary charges against a prisoner's enemy, even if it runs afoul of prison rules.  The failure of the prison to follow its own policies is not sufficient to make out a civil

rights claim.  <u>Richardson v. Thornton</u>, 299 Fed. Appx 461, 463 (5th Cir. 2008).  And arriving after an incident to investigate it and discuss it with Plaintiff equally fails to show a constitutional violation.  Plaintiff makes a general assertion that Kennedy "falsified documents" in connection with the administrative grievance process, but this assertion is merely conclusory and does not demonstrate a violation of constitutional rights that would survive even Rule 12(b)(6) review under <u>Twombly</u>/<u>Iqbal</u>.

### F. Goodwin and Huff

Plaintiff alleges that Warden Jerry Goodwin and Deputy Warden Angie Huff learned of the failure to protect claim through Plaintiff's grievance request but "failed to do anything to redress or fix any of the violations within the situation." This does make out a viable claim because Plaintiff "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction." <u>Geiger v. Jowers</u>, 404 F.3d 371, 374 (5th Cir. 2005).

Plaintiff also makes a general assertion that these two supervisory officials were "highly negligent" in managing subordinates, but negligence does not state a claim under Section 1983. <u>Davidson v. Cannon</u>, 106 S.Ct. 668 (1986) (negligent failure to prevent inmate attack did not state a claim).  Plaintiff also alleges that the two "directly participated," but Plaintiff does not articulate how they allegedly participated in any constitutional violation.[6]

---

[6] The doctrine of respondeat superior does not apply, so Section 1983 does not permit a cause of action based on the conduct of subordinates.  <u>Stewart v. Murphy</u>, 174 F.3d 530, 536 (5th Cir. 1999).  To state a cause of action under Section 1983, the plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." <u>Woods v. Edwards</u>, 51 F.3d 577, 583 (5th Cir. 1995).

There are no specific allegations that Huff or Goodwin were made aware of Plaintiff's fear of attack *before* the attack or that they were in any way involved in the events immediately surrounding the attack.  Plaintiff may be dissatisfied with their treatment of his post-attack grievances, but there is nothing they could have done at that point to prevent the attack that had already happened.

**Retaliation**

Plaintiff asserts in his motion that he was subjected to reprisal and retaliation for filing grievances and other complaints related to this matter.  To state a valid claim for retaliation under Section 1983, a prisoner must allege (1) his invocation of a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner due to his exercising that right, (3) a retaliatory adverse act, and (4) a causal connection.  Jones v. Greninger, 188 F.3d 322, 324–25 (5th Cir. 1999).  The prisoner must be able establish that but for the retaliatory motive the complained of incident—such as the filing of disciplinary reports or deprivation of privileges—would not have occurred.  Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.1995).

Claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts. Woods, 60 F.3d at 1166.  Conclusional assertions of retaliation are insufficient. The prisoner must produce either direct evidence of retaliation or at least "a chronology of events from which retaliation may plausibly be inferred."  Id.; Scott v. Nail, 589 Fed. Appx. 297, 298 (5th Cir. 2015).

Plaintiff's motion does not specifically identify any retaliatory adverse act. He has also not set forth any specific facts that are either direct evidence of retaliation or that show a chronology from which retaliation may plausibly be inferred. The mere fact that a prisoner has filed a grievance does not make every later action with which he disagrees a retaliation claim actionable under the Constitution. There may be additional facts that could be garnered by digging through the hundreds of pages of paper Plaintiff has filed, but Plaintiff was informed that this motion practice would be decided based upon certain documents. And when evidence exists in the summary judgment record, but a party fails to refer to it in his motion or response to a motion, the court does not have a duty to sift through the record in search of evidence to support a party's position. Malacara v. Garber, 353 F.3d 393, 405 (5th Cir. 2003); de la O v. Housing Authority of El Paso, 417 F.3d 495, 501 (5th Cir. 2005). Plaintiff's retaliation claim should be dismissed.

**Official Capacity Claims**

Defendants include a boilerplate assertion that they are entitled to dismissal of all official capacity claims against them. A Section 1983 suit for money damages against a state official in his official capacity is not allowed. The official is not considered a person under the statute, Will v. Michigan Dept. of State Police, 109 S.Ct. 2304 (1989), and the suit is considered the same as a suit against the state itself so is barred by the Eleventh Amendment. Hafer v. Melo, 112 S.Ct. 358 (1991); Kentucky v. Graham, 105 S.Ct. 3099 (1985). Plaintiff may not have specified the capacity in which he asserted his claims, but such determinations are made from the "course of proceedings." Graham, at n. 14, citing Brandon v. Holt, 105

S.Ct. 873, 877 (1985); <u>US ex rel. Adrian v. Regents of University of California</u>, 363 F.3d 398, 402-03 (5th Cir. 2004).  The difference between the two forms of claims is explained in <u>Graham</u>.

The filings in this case, and the nature of the claims, give no indication that Plaintiff is asserting an official capacity claim against any defendants.  He alleges that the defendants are personally at fault because of their individual acts or failures to act. He does not seek injunctive relief against a department or state law, policy, or custom that would be properly asserted against an officeholder in his official capacity as permitted by the <u>Ex Parte Young</u> doctrine.

Attorneys for correction officers often file motions that attack official capacity claims when there are no such claims actually at issue.  True official capacity claims are rare in prisoner litigation.  Counsel should determine whether the complaint and course of proceedings actually present a meaningful official capacity claim before filing a motion to dismiss such claims.  Motion practice to attack a nonexistent or "straw man" claim wastes time that could be spent on issues of more substance.  <u>Williams v. Wallace</u>, 2010 WL 59216 (W.D. La. 2010).

**Conclusion**

Plaintiff is not entitled to summary judgment on any claims.  Defendants are entitled to summary judgment or the dismissal for failure to state a claim of many but not all claims. The claims that will remain, if this recommendation is accepted, are: (1) conditions of confinement claim against Lonnie Nail and (2) failure to protect claim against Louis

Edwards, Glen Goodwin, Antonio Turner, James Arnold, and Roderick Malcolm. All other claims should be dismissed.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's **Motion for Summary Judgment (Doc. 132)** be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendants' **Motion for Summary Judgment (Doc. 110)** be **granted in part** by dismissing (1) all claims based on the lack of criminal charges against Charles Cody, (2) all procedural due process claims related to the disciplinary proceedings and sanctions, (3) all claims for loss of or damage to property, (4) all claims for denial of access to the courts, (5) all claims based on equal protection and sexual orientation, (6) all claims based on retaliation, and (7) all claims against Mark Hunter, Jamie Fussell, Patrice Kennedy, Jerry Goodwin, and Angie Huff.  It is recommended that Defendants' motion be **denied** in all other respects.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of August, 2015.

Mark L. Hornsby
U.S. Magistrate Judge

Page 23 of  23