UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

KENNETH ANTHONY IDEL                    CIVIL ACTION NO. 13-cv-1262
  a/k/a Kenneth Anthony Idel Culbreth

VERSUS                                  JUDGE FOOTE

LOUIS EDWARDS, ET AL                    MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

    Kenneth Anthony Idel Culbreth ("Plaintiff") is a self-represented inmate who was formerly housed at the David Wade Correctional Center. His principal claim is that prison officials allegedly failed to protect Plaintiff from an attack by fellow inmate Charles Cody, who struck Plaintiff with a mop wringer. What should have been a fairly straightforward claim has spiraled out of control as Plaintiff has asserted claims against almost every prison official who had any connection to the events whatsoever. After extensive briefing and motion practice, the claims were eventually reduced to (1) a conditions of confinement claim against Lonnie Nail and (2) a failure to protect claim against five other defendants. Docs. 147 and 157.

    The consolidation of claims was based on a Report and Recommendation. All parties objected to the recommendation, and Lonnie Nail included in his objections a new argument that the conditions of confinement claim against him should be dismissed because Plaintiff had not properly exhausted his administrative remedies. Judge Foote stated in the order

adopting the recommendation that it was more appropriate that this new defense be the subject of a separate motion so that it could be fully briefed. Nail then filed a Motion for Summary Judgment (Doc. 158) that is now before the court. For the reasons that follow, it is recommended that Nail's motion be granted and that all claims against him be dismissed.

**Summary Judgment**

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013) (quoting Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505 (1986)).

This motion is different from the ordinary summary judgment motion by a defendant that attacks a claim on which the plaintiff has the burden of proof. Exhaustion is an affirmative defense, so the burden here is on the defendant to demonstrate that the prisoner failed to exhaust available administrative remedies. Jones v. Bock, 127 S.Ct. 910 (2007). A defendant "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). And "[s]ince exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, [the Fifth Circuit has] conclude[d] that judges may resolve factual disputes concerning exhaustion without the participation of a jury." Id. at 272.

**Analysis**

The earlier Report and Recommendation (Doc. 147) recounted that Plaintiff asserted he was subjected to cruel and unusual conditions while housed on extended lockdown in N-4C "by orders of Lonnie Nail" after Plaintiff's family members faxed and phoned on his behalf and Plaintiff wrote the warden and secretary for help. Plaintiff alleges in his motion that he was placed in a strip cell in December 2012, and officials were authorized by Nail to cut off the heat, turn on blowers, and open all windows to punish Plaintiff and fellow prisoners. The court noted that Nail is the only defendant targeted by this claim. The claim could not be resolved on the merits in the earlier summary judgment contest because Plaintiff did not back his assertions with evidence, and Nail did not squarely address the claim in his original submissions. The request by both parties for summary judgment was denied.

Nail now contends that the claim is subject to dismissal because it is beyond the scope of any administrative grievance properly exhausted by Plaintiff. The defense is based on the provision in 42 U.S.C. § 1997e(a) that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The statute requires proper exhaustion in accordance with prison or jail procedures. Woodford v. Ngo, 126 S.Ct. 2378 (2006). Its reference to actions "with respect to prison conditions" is interpreted broadly. Porter v. Nussle, 122 S.Ct. 983 (2002).

The grievance procedure for state prisoners is set forth in Louisiana Administrative Code, Title 22, Part I, § 325. It is a two-step process that begins with a letter or grievance

sent to the warden in which the prisoner briefly sets out the basis for his claim and the relief sought. A request to the warden "shall be made in writing within a 90 day period after an incident has occurred." An inmate who is dissatisfied with the first-step response may appeal to the Secretary of the Department of Public Safety and Corrections. If the prisoner is not satisfied with the Secretary's response, he may file suit.

Plaintiff filed several grievances related to his many claims, but Nail represents that Plaintiff filed only one that could plausibly exhaust the conditions of confinement claim that Plaintiff asserts in his complaint. That grievance is DWCC-2013-0049. Plaintiff alleges in his pleadings that the conditions situation arose in December 2012, and that grievance was filed January 7, 2013. Plaintiff wrote in the grievance that he had given a note to an officer on December 12, 2012 and asked him to deliver it to unit manager Col. Lonnie Nail. The note asked that Nail speak to Plaintiff privately and confidentially in regards to issues with a cellmate who was being loud and arguing with nurses. Plaintiff also complained of sexual activity in the area. He complained there was no need that he be placed in a mental health disciplinary offender unit and that he was being subjected to cruel and unusual punishment daily by enduring the conditions in that area, which included loud noise, officials turning off the heat and opening windows to let cold air inside, and officials turning on air blowers to try to punish the inmates.

Executive staff officer Tommy Garrett testifies in an affidavit that he received this grievance and, after initial screening, accepted it for processing. But on January 14, 2013, Garrett received a letter from Plaintiff which stated: "Greetings Mr. Garrett, I wish to

withdraw ARP 13-0049. Would you please assist." The note was signed by Plaintiff. Garrett testifies that, based on this request, he withdrew the ARP grievance. Attached to his affidavit is a memorandum that he sent to Plaintiff to confirm the grievance had been withdrawn "per your request." Lonnie Nail also submits an affidavit in which he states that he never received notice of any problem from Plaintiff with regard to his cellmate assignment or lack of heat or cold temperatures in December 2012 or January 2013.

Plaintiff's response to the motion for summary judgment does not deny that he withdrew the grievance at issue. He states that he did, however, file a request for assistance with the Secretary of the Department of Corrections, which was filed as Exhibit 25 to his prior motion for summary judgment. That submission was a confidential request to the Secretary that complained about matters ranging from being kicked out of Vo-Tech classes to being placed in substance abuse therapy to being placed in lockdown after the mop wringer incident. The submission does not appear to be part of the grievance process related to DWCC-2013-0049. It does not address the conditions of confinement issues presented as claims against Nail, and it is dated October 2012—two months before the alleged cold and other conditions in December 2012. That submission does not show that Plaintiff properly exhausted the two-step grievance process on a timely basis.

Plaintiff also points to a number of other exhibits that he contends show his conditions claim is actionable. Most of them are declarations from other prisoners that support Plaintiff's allegations with regard to the conditions, but they offer nothing relevant to administrative exhaustion. Plaintiff also points to Exhibit A to Defendants' prior motion for

summary judgment (Doc. 110), which was a collection of grievances that Plaintiff filed relevant to other claims. Those exhibits may show that Plaintiff exhausted some of his other claims, but Plaintiff has not pointed to any particular filings that would show he properly and timely presented his conditions of confinement claim against Nail.

**Conclusion**

Lonnie Nail has submitted competent evidence that shows Plaintiff submitted a single grievance regarding his conditions of confinement claim stemming from the December 2012 conditions alleged in this lawsuit. That grievance was withdrawn before step one was completed, so it cannot serve as evidence of proper exhaustion of the two-step process. Plaintiff has not presented competing evidence that would create a genuine dispute of material fact on this issue, and the record supports a finding that Nail has established a valid exhaustion defense. Nail is entitled to summary judgment with regard to the conditions of confinement claim. That is the sole remaining claim against him, so acceptance of this recommendation will terminate him as a defendant in this case.

Accordingly,

**IT IS RECOMMENDED** that Lonnie Nail's **Motion for Summary Judgment (Doc. 158)** be **granted** and that all remaining claims against Nail be **dismissed with prejudice**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 7th day of January, 2016.

Mark L. Hornsby
U.S. Magistrate Judge